IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EQUAL EMPLOYMENT OPPORTUNITY  *
COMMISSION                    *
                              *
v.                            *    Civil Action No. WMN-09-2569
                              *
LIFE TECHNOLOGIES CORPORATION *
                              *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM

Before the Court is a motion for summary judgment filed by
Defendant Life Technologies Corporation, Paper No. 19, as well
as a motion for partial summary judgment filed by Plaintiff
Equal Employment Opportunity Commission (EEOC), Paper No. 20.
Both motions are fully briefed. Upon a review of the pleadings
and the applicable case law, the Court determines that no
hearing is necessary, Local Rule 105.6, and that both motions
must be denied.

## I. FACUTAL AND PROCEDURAL BACKGROUND

The EEOC has brought this action on behalf of Douglas
Scrivner alleging that Mr. Scrivner's employer, Defendant Life
Technologies Corporation, has failed to adequately accommodate
his disability. Mr. Scrivner is profoundly deaf and has been
since birth. He has some proficiency in speech recognition
(commonly known as "lip reading") and in the reading and writing
of English but his level of proficiency in these modes of

communication is in dispute. Mr. Scrivner would consider his primary language to be American Sign Language (ASL).

Defendant Life Technologies is a global biotechnology corporation with approximately 9000 employees and three billion dollars in annual sales. Mr. Scrivner has worked as a Material Handler in Defendant's Frederick, Maryland distribution center since April 2006. At that facility, products from other locations are received, organized, and shipped to Defendant's customers. Mr. Scrivner's job involves "picking" prepackaged products off a shelf, packing those products in a tote, and sending them to a "pack station" for further packaging and transport. Those products include some biohazardous materials, although the parties disagree as to the amount of hazardous materials that are handled at the facility and to the degree to which Mr. Scrivner is exposed to those materials. Defendant has approximately 300 regular employees at its Frederick facility.

In December 2007, Mr. Scrivner filed a charge with the EEOC asserting that Defendant had failed to accommodate his disability. Specifically, Mr. Scrivner challenges Defendant's failure to provide him with an ASL interpreter for the numerous meetings that he is required to attend as part of his employment. There are at least five different types of meetings at the Frederick facility that involve Mr. Scrivner: daily startup meetings that occur at the beginning of each shift and

last about 10 minutes and in which safety issues and changes in shipping procedures are discussed; weekly "huddle meetings" that last five to fifteen minutes and in which production related goals, problems, and concerns are discussed; "safety meetings" which take place generally once a month and which are the primary method of communicating information related to job safety; departmental meetings which are scheduled as needed to discuss changes within the Distribution department; and "all-employee" meetings which are held quarterly and at which Defendant's overall business goals are presented. Although Defendant has provided interpreters for some meetings,[1] written notes and handouts of the content covered for other meetings, and opportunities to meet one-on-one with his immediate supervisor to ask questions through the exchange of written notes, Mr. Scrivner charges that these accommodations are insufficient to allow him to fully participate in those meetings and adequately understand what is being communicated.

After the parties failed to reach agreement as to the appropriate accommodation through the interactive process, the EEOC filed this action on Mr. Scrivner's behalf alleging that

---

[1] The record is somewhat unclear as to exactly how often Defendant provided an interpreter. For example, in Defendant's motion for summary judgment, it indicated that between October 2006 and October 2009, it had done so on at least 24 occasions. Def.'s Mot. at 18. In its reply brief, however, Defendant represented that it had provided Mr. Scrivner with sign language interpreters on 40 separate occasions. Def.'s Reply at 10.

Defendant has violated §§ 102(a) and 102(b)(5)(A) of Title I of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12112(a) & 12112(b)(5)(A).  In moving for summary judgment, Defendant argues that the accommodations that it has already provided are reasonable and effective.  As the primary proof of their effectiveness, Defendant points to the undisputed fact that Mr. Scrivner has been able to perform all of the essential functions of his position.  Defendant considers Mr. Scrivner to be a good employee, he has never been disciplined, has a good safety record, and has received every merit increase for which he was eligible.  Defendant also argues that Mr. Scrivner's requested accommodation, i.e., the provision of an interpreter for every meeting, would constitute an undue burden, beyond that which is required under the ADA.  Defendant opines that the requested accommodation would cost Defendant over $50,000 a year, nearly twice the amount of Mr. Scrivner's salary, and would be difficult to administer due to the irregular scheduling of some of the meetings.  Finally, Defendant suggests that Mr. Scrivner failed to participate in good faith in the interactive process.

The EEOC opposes Defendant's motion and also moves for partial summary judgment as to liability, arguing that the ADA requires accommodations that do more than simply allow the employee to perform the essential functions of the job; those

4

accommodations must also permit the employee to have "full access to the benefits and privileges of employment." EEOC's Mot. at 23. The EEOC contends that the undisputed facts show that Mr. Scrivner seldom understands what is going on in meetings, is unable to do more than guess at how to do his job and, as a result, "experiences frustration and anger to the point where he has become sick from the stress." Id. at 21 (citing Scrivner Dep. at 73). The EEOC also contends that it is aware of a vendor that could provide sign language interpretation services in a manner that is much more reasonable, in terms of both cost and ease of administration.

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In Anderson v. Liberty Lobby, Inc., the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. Thus, "the judge must ask himself not whether he

thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." Id. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405 (4th Cir. 2005). The opponent, however, must bring forth evidence upon which a reasonable fact finder could rely. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact." Pension Benefit Guar. Corp. v. Beverley, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing Pine Ridge Coal Co. v. Local 8377, UMW, 187 F.3d 415, 422 (4th Cir. 1999)). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. Anderson, 477 U .S. at 252.

When faced with cross-motions for summary judgment, as in this case, the court must consider "each motion separately on its own merits to determine whether either of the parties

deserves judgment as a matter of law." <u>Rossignol v. Voorhaar</u>, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted); <u>see also</u> <u>havePower, LLC v. Gen. Elec. Co.</u>, 256 F. Supp. 2d 402, 406 (D. Md. 2003) (citing 10A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2720 (3d ed. 1983)). The court reviews each motion under the familiar standard for summary judgment, <u>supra</u>. The court must deny both motions if it finds there is a genuine issue of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Federal Practice & Procedure § 2720.

## III. DISCUSSION

The ADA prohibits discrimination against "a qualified individual with a disability, because of the disability of such individual, in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the statute, a "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." <u>Id.</u> § 12111. The term "discriminate" includes "not making <u>reasonable accommodations</u> to the known physical or mental limitations of an

7

otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer.]" Id. § 12112(b)(5)(A) (emphasis added). The regulations implementing the ADA specify that the duty to provide "reasonable accommodation" can require "[m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1)(iii) (emphasis added).

Here, Defendant concedes that Mr. Scrivner is a qualified individual with a disability, i.e., a disabled individual who is capable of performing his job duties with or without an accommodation. Def.'s Mot. at 13. Thus, the first question for the trier of fact would be whether Defendant has provided a reasonable accommodation for Mr. Scrivner's disability. If the trier of fact were to determine that the accommodations provided by Defendant are insufficient, Defendant could still prevail by establishing the affirmative defense that the accommodation for which Mr. Scrivner advocates would create an "undue hardship" for Defendant.

In arguing that there can be no genuine dispute of fact that it has provided Mr. Scrivner a "reasonable accommodation," Defendant adopts what the Court finds to be an understanding of that term that is too limited in scope. Defendant opines that,

"[i]n sum, the ADA provides that a reasonable accommodation is one that enables a disabled employee to perform the essential functions of his or her position." Def.'s Reply at 22. To support its conclusion that its obligations under the ADA are being fully met as long as Mr. Scrivner is able to perform his essential functions of the job, Defendant argues, as it must, that the EEOC exceeded the scope of its authority when it issued the regulation quoted above, 29 C.F.R. § 1630.2(o)(1)(iii). Def.'s Reply at 17-22. This regulation requires employers to make modifications and adjustments, not just to minimally permit disabled employees to do their job, but also to permit them to enjoy all of the "benefits and privileges" of the job as would any other employee.

Under Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc., 467 U.S. 837 (1984), courts conduct a two step analysis when determining the validity of an agency's action or regulation. First, the court considered whether Congress has spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter, for the agency and court must give effect to the unambiguously expressed intent of Congress. Id. at 841-44. If the court concludes that Congress has not spoken to the issue and left a gap for regulations to fill, then the court proceeds to step two and considers whether the agency's interpretation of the statute is

"based upon a permissible construction of the statute."  <u>Id.</u> at

843.  Under this second step of <u>Chevron</u>, the agency's

interpretation ordinarily is accorded deference, unless the

regulation is "arbitrary, capricious, or manifestly contrary to

the statute."  <u>Id.</u>  The Court concludes that under this

analysis, 29 C.F.R. § 1630.2(o)(1)(iii) is clearly a valid

regulation.

As the EEOC observes, the regulation essentially mirrors

the language of the ADA.  The statute provides that employers

should not discriminate "in regard to job application

procedures, the hiring advancement, or discharge of employees,

employee compensation, job training, <u>and other terms,</u>

<u>conditions, and privileges of employment.</u>"  42 U.S.C. § 12112(a)

(emphasis added).  The provision of the implementing regulation

that defines "reasonable accommodation," 29 C.F.R. § 1630.2(o),

essentially tracks the language of the statute: subsection (i)

references modification and adjustments to the job application

process; subsection (ii) references modifications and

adjustments necessary to enable a qualified individual to

perform the essential functions of the position; and subsection

(iii) references modifications and adjustments that enable a

qualified individual "to enjoy equal <u>benefits and privileges of</u>

<u>employment</u> as are enjoyed by its other similarly situated

employees without disabilities." (emphasis added).

The Court also notes that Defendant's understanding of reasonable accommodation is inconsistent with other provisions in the statute. The statute's definition of a "qualified individual with a disability" includes those who can "perform the essential functions of the employment position" "without reasonable accommodations." 42 U.S.C. § 12111(8). Implicit in that definition is the expectation that some accommodations are provided to do more than just permit the qualified individual with a disability to perform the essential functions of the position.

Defendant argues that § 1630.2(o)(1)(iii) is inconsistent with another regulation issued by the EEOC, 29 C.F.R. § 1630.9, and the interpretive guidance offered by the EEOC regarding § 1630.9, 29 C.F.R. app. § 1630.9. Section 1630.9 simply provides that,

> if [an] individual rejects a reasonable accommodation, aid, service, opportunity or benefit that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered a qualified individual with a disability.

While the regulation certainly indicates that some reasonable accommodations are for the purpose of enabling an individual to perform the essential functions of a job, nothing in its language indicates that all reasonable accommodations must be for that purpose.

The interpretive guidance offered by the EEOC related to that regulation draws a distinction between those accommodations that are "job-related" and those that are "personal items" that "assist the individual throughout his or her daily activities." [2] Examples given of adjustments or modifications that are personal items are prosthetic limbs, wheelchairs and eyeglasses and the EEOC acknowledges in the interpretive guidance that the employer is not obligated to provide these kinds of items. This guidance does not indicate, however, that reasonable accommodations are limited to those that are necessary to enable the employee to perform essential job functions, but simply those that are "job related.[3] In fact, immediately preceding the portion of the interpretive guidance highlighted by Defendant, the EEOC emphasizes that the reasonable accommodation that is required by this part should provide the qualified individual with a

---

[2] The Interpretive Guidance provides in pertinent part,

> if an adjustment or modification is job-related, e.g., specifically assists the individual in performing the duties of a particular job, it will be considered a type of reasonable accommodation. On the other hand, if an adjustment or modification assists the individual throughout his or her daily activities, on and off the job, it will be considered a personal item that the employer is not required to provide.

29 C.F.R. app. § 1630.9.

[3] Defendant, of course, would be hard pressed to argue that the provision of an interpreter for mandatory employee meetings is not "job-related."

12

disability with an "equal employment opportunity."  29 C.F.R.

app. § 1630.9.  "Equal employment opportunity," in turn, is

defined as "an opportunity to attain the same level of

performance, <u>or to enjoy the same level of benefits and</u>

<u>privileges of employment</u> as are available to the average

similarly situated employee without a disability."  <u>Id.</u>[4]

Just as there is no support for Defendant's position in the

statute or regulations, neither does the case law cited by

Defendant stand for the proposition that reasonable

accommodations under the ADA are limited only to those that

enable essential job functions.  In several of the decisions

cited, the courts simply held that the employee was not a

qualified individual with a disability because he or she was

unable to perform essential job functions, even with the

requested accommodations.  <u>See, e.g.</u>, <u>Myers v. Hose</u>, 50 F.3d 278

(4th Cir. 1995); <u>Dicksey v. New Hanover County Sheriff's Dept.</u>,

522 F. Supp. 2d 742 (E.D.N.C. 2007); <u>Doyle v. Rite Aid Corp.</u>,

---

[4] Defendant highlights the next sentence: "'<u>Thus, for example, an</u>
<u>accommodation made to assist an employee with a disability in</u>
<u>the performance of his or her job must be adequate to enable the</u>
<u>individual to perform the essential functions of the relevant</u>
<u>position.</u>'"  Def.'s Reply at 21 (quoting 29 C.F.R. app. §
1630.9, emphasis added by Defendant).  This statement simply
provides that accommodations made for the purpose of enabling an
employee to perform essential functions must be adequate.  It is
not a concession from the EEOC, as Defendant claims, that
"reasonable accommodations are directly those which enable the
employee to perform the essential functions of his job." Def.'s
Reply at 21.

Civ. No. RDB-08-1106, 2010 WL 445387 (D. Md. Feb. 1, 2010). In
most of the cases cited by Defendant, the issue of
accommodations beyond those necessary to enable the employee to
perform essential functions was not even raised. While these
decisions may contain language that appears favorable to
Defendant's argument, the facts and actual holdings of the cases
provide little if any support for Defendant's position.

For example, Defendant cites Campbell v. Wal-Mart Stores,
Inc., 272 F. Supp. 2d 1276 (N.D. Okla. 2003), for the
proposition that "'[g]enerally, when an employee is able to
perform the essential functions of the job to which [he/she] is
assigned, the duty to accommodate does not arise.'" Mot. at 26
(quoting Campbell, 272 F. Supp. 2d at 1291). Similar to
Defendant's argument here, Wal-Mart presented as evidence that
no accommodation was needed the fact that the plaintiff had, for
eleven years, been able to perform, without accommodation, her
job which entailed sorting and hanging clothes and separating
hangers. The court actually held, though, that there was a
genuine dispute of material fact as to whether the plaintiff
required a reasonable accommodation, reasoning that,

> [i]t is logical to conclude that the essential
> functions of Plaintiff's job encompassed not only
> Plaintiff's ability to sort hangers and fold clothes,
> but also her ability, at least on some basic level, to
> communicate with management and co-workers in order to
> comprehend the changes occurring around her.
> Plaintiff's contention that the purpose of a

> reasonable accommodation is not merely for the
> performance of job functions, but also to enable
> employees to "enjoy the privileges and benefits of
> employment" is well-taken.

272 F. Supp. 2d at 1291.

In another decision upon which Defendant relies, <u>Kiel v.</u>
<u>Select Artificials, Inc.</u>, 169 F.3d 1131 (8th Cir. 1999), the
Eighth Circuit did deem effective those accommodations which
would allow individuals to perform the essential functions of
their positions. <u>Id.</u> at 1137. It also emphasized, however,
that "[a] reasonable accommodation should provide the disabled
individual an equal employment opportunity, including an
opportunity to attain the same level of performance, benefits,
and privileges that is available to similarly situated employees
who are not disabled." <u>Id.</u> at 1136. In affirming the district
court's grant of summary judgment in favor of the employer, the
court specifically noted that the employer had provided an
interpreter "on the one occasion that a training session was
relevant to [the plaintiff's] position." <u>Id.</u> at 1137.
Defendant cannot argue similarly that it has provided an
interpreter for every meeting relevant to Mr. Scrivner's
position.

Perhaps most telling to the deficiency in Defendant's
argument is its citation to <u>EEOC v. UPS Supply Chain Solutions</u>,
No. CV 06-6210, 2008 WL 6747392 (C.D. Cal. Sept. 18, 2008),

which it described as "far more analogous" to the facts in the
instant case than cases upon which the EEOC relied.  Def.'s Mot.
at 30.  In UPS Supply, a deaf employee requested that his
employer provide an ASL interpreter for weekly meetings.  While
the employer provided ASL interpreters for a number of meetings,
it did not do so for all of the meetings that "would have been
of interest" to the deaf employee.  When an interpreter was not
provided, the employer communicated with the employee by note-
writing and the provision of written materials, such as meeting
agendas and informational material, to communicate information
that was communicated to others orally.  Id. at *1.  The EEOC
brought an action on behalf of the employee arguing that these
accommodations did not go far enough.  Without disputing that
the employee "was always able to perform his job duties," the
EEOC argued the accommodations were insufficient because the
employee "did not always understand what was being
communicated."  Id. at *2.  As characterized by Defendant,
"[t]he district court granted summary judgment for the employer
because it found that the employee was able to perform the
essential functions of his job with the accommodations provided
by the defendant."  Def.'s Mot. at 30 (citing 2008 WL 6747392 at
* 8-9).

    After the completion of the briefing of the motions in
this action, the Ninth Circuit reversed the district court's

decision in UPS Supply.  EEOC v. UPS Supply Chain Solutions, --
F.3d --, 2010 WL 3366256 (9th Cir. Aug. 27, 2010).  The Ninth
Circuit concluded that "there is a genuine issue of fact
regarding whether the agendas, contemporaneous notes, and
written summaries contained information sufficient to enable a
person reading those documents to enjoy the same benefits and
privileges of attending and participating in the weekly meetings
as other employees."  Id. at *7.  The court noted specifically
that the accommodations provided were ineffective because the
employee was not provided the same information at the same time
as other employees and that he did not have the opportunity to
ask questions or share his ideas.  Id.

     While Defendant now attempts to distinguish the facts in
UPS Supply from those in Mr. Scrivner's case (and there
certainly are distinctions that could be made), the Court finds
that the same issues regarding the effectiveness of Defendant's
current accommodations are present here.  Mr. Scrivner certainly
cannot participate in the mandatory meetings in the same manner
as other employees.  Whether that different level of
participation deprives him of some benefits or privileges of his
employment is the subject of a genuine dispute of fact.

     So too is the question as to whether the accommodation
sought by Mr. Scrivner would create an undue hardship for
Defendant.  Defendant initially argued that providing an

interpreter for every meeting would be cost prohibitive and administratively unworkable. Defendant apparently only contacted one provider of interpretation services. That vendor currently charges $70 per hour with a two hour minimum and a $70 flat travel fee. Thus, it would cost at least $210 for every meeting that Mr. Scrivner attends, which is at least one per day. Because the services of that particular vendor must be procured in advance and because some meetings are scheduled on an as-needed basis, Defendant contends that the administrative burdens of providing an interpreter for every meeting itself would create an undue hardship, regardless of the cost.

The EEOC proffers a solution that would appear to address both concerns. The EEOC represents that there is a vendor in the state of Maryland that can provide video remote interpretation (VRI) through video conferencing. When providing VRI, the interpreter remains in his or her office and provides the interpretation through web cams. This service is available without advanced scheduling and is offered for $3 a minute, with only a 15 minute minimum. Less expensive monthly packages are also available.

Defendant offers little in response to the EEOC's proposed alternative interpretation service provider. Defendant appears to concede that financial considerations would no longer render the provision of interpretation services at every meeting an

undue hardship.  See Def.'s Reply at 22-23 (limiting argument regarding undue burden to administrative considerations).  While continuing to argue that hiring interpreters for different meetings, at different times and of different lengths creates a "extreme administrative difficulty," Defendant does not explain why this is so.  The EEOC represents that the vendor in question can provide services without any advanced scheduling and Defendant does not challenge that representation.

Finally, the Court concludes that there is a genuine dispute of material fact as to Mr. Scrivner's good faith participation in the interactive process.  Under the ADA, the disabled employee has the responsibility to first make the request for an accommodation.  Bryant v. Better Business Bureau of Greater Md., Inc., 932 F. Supp. 720, 737 (D. Md. 1996).  Once the request has been made, the ADA requires that the employer and employee engage in an interactive process to identify a reasonable accommodation.  Id.  Identifying a workable accommodation is a responsibility shared between the employer and employee and "a party that obstructs or delays the interactive process, or simply fails to communicate, is not acting in good faith to find a solution."  Fleetwood v. Harford Systems, Inc., 380 F. Supp. 2d 688, 701 (D. Md. 2005).

There is some evidence in the record that Mr. Scrivner may have been less than forthcoming in informing Defendant that he

believed the accommodations Defendant was provided were ineffective. <u>See</u> Aff. of Sarah Wood ¶ 8 (stating that Mr. Scrivner told Wood, one of Defendant's HR Generalists at the time, that while he "preferred sign language interpreters, written communication was effective"). The Senior HR Manager at Defendant's Frederick facility, Uma Hoffman, testified that after Mr. Scrivner filed his charge with the EEOC, he effectively stopped communicating with Defendant, indicating that he would only give information to the EEOC. Hoffman Dep. at 149.

While on the current record the Court cannot lay the responsibility for the failure of the interactive process on Mr. Scrivner, or on Defendant, or on the EEOC, it is apparent that the process did breakdown. It is remarkable that the possibility of employing VRI, which appears to be a much more feasible method of providing ASL interpretation, did not surface until this late in litigation. While the use of that vendor may not be a complete solution, the use of that means of accommodation should have been explored long before now.

**IV. CONCLUSION**

Finding that this action is replete with genuine issues of material facts, the Court will deny the summary judgment motions of both Plaintiff and Defendant. A separate order will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: November 4, 2010